UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**Tracy Huss,**

      Plaintiff,

vs.

**MVC Clinical Practice-MI PC,**
a Michigan professional corporation,
d/b/a **Metro Vein Centers**,
**A and G Aesthetics PLLC,**
a Michigan professional
limited liability company,
d/b/a **Metro Vein Centers**,
**MVC MSO LLC,**
a Delaware corporation,
**Albaron Partners LP**,
a New York Limited Partnership, and
**Art Golden** and **Patrick Daley,**
individuals, jointly and severally,

      Defendants.

**DEMAND FOR JURY TRIAL**

Case No. 20-     -CD
Honorable:

_____

**GASIOREK, MORGAN, GRECO,
McCAULEY & KOTZIAN, P.C.**
BY:  RAY CAREY (P 33266)
Attorneys for Plaintiff
30500 Northwestern Highway, Suite 425
Farmington Hills, MI 48334
(T) 248-865-0001 (F) 248-865-0002
Rcarey@gmgmklaw.com

_____

**COMPLAINT AND JURY DEMAND**

Plaintiff Tracy Huss, by her attorneys, GASIOREK, MORGAN, GRECO, McCAULEY & KOTZIAN P.C., for her Complaint against Defendants, MVC Clinical Practice-MI PC, A and G Aesthetics PLLC, MVC MSO LLC, Albaron Partners, LP, Art Golden, and Patrick Daley (collectively "Defendants"), states as follows:

1.      This is an action for violation of the Equal Pay Act of 1963, 29 U.S.C. § 206; disparate treatment discrimination against Ms. Huss on account of her sex in violation of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), M.C.L.A. §§37.2101, *et seq*.; and tortious interference with Ms. Huss's employment contract and advantageous employment and business relationship and expectancy with Defendants, MVC Clinical Practice-MI PC, A and G Aesthetics PLLC, and MVC MSO LLC.

## PARTIES

2.      Plaintiff Tracy Huss (hereinafter referred to as "Plaintiff") is an individual who currently resides in the state of Pennsylvania.

3.      Defendant MVC Clinical Practice-MI PC is a Michigan professional corporation which does business and operates as Metro Vein Centers (hereinafter "MVC Clinical Practice" or "Metro Vein Centers") with offices and a principal place of business in West Bloomfield, County of Oakland, State of Michigan.

2

4.      Defendant A and G Aesthetics PLLC is a Michigan professional limited liability corporation which also does business and operates as Metro Vein Centers (hereinafter "A and G Aesthetics PLLC" or "Metro Vein Centers") with offices and a principal place of business in West Bloomfield, County of Oakland, State of Michigan.

5.      Defendant MVC MSO LLC is a Delaware corporation with offices and a principal place of business in West Bloomfield, County of Oakland, State of Michigan, where it manages the operations, human resource and other functions of Metro Vein Centers and employs individuals who work for Metro Vein Centers (hereinafter "MVC MSO" or " Metro Vein Centers").

6.      Defendant Albaron Partners LP (hereinafter "Albaron Partners") is a New York limited Partnership with offices in Long Island City, N.Y., and West Bloomfield, County of Oakland, State of Michigan, and it owns and operates Metro Vein Centers.

7.      Defendant Art Golden (hereinafter "Golden") is an individual who is the Chief Operating Officer of Metro Vein Centers, and who , upon information and belief, temporarily resides in Royal Oak, in the County of Oakland, State of Michigan, and who at all times relevant had an office and a principal place of business in West Bloomfield, County of Oakland, State of Michigan.

3

8.      Defendant Patrick Daley (hereinafter "Daley") is an individual who is the Physician Liaison Manager of Metro Vein Centers, who, upon information and belief, temporarily resides in Royal Oak, in the County of Oakland, State of Michigan, and who at all times relevant had an office and a principal place of business in West Bloomfield, County of Oakland, State of Michigan.

## JURISDICTION AND VENUE

9.      The amount in controversy exceeds $75,000 exclusive of interest and costs.

10.      This Court has subject matter jurisdiction over Plaintiff's claims under and pursuant to 28 USC § 1331 (federal question jurisdiction), 28 U.S.C. § 1332 (diversity jurisdiction), and 29 USC §216(b) (equal pay).

11.      This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over Plaintiff's state law claims for ELCRA violations and tortious interference with Plaintiff's employment contract or and advantageous employment and business relationship and expectancy with Defendants, MVC Clinical Practice-MI PC, A and G Aesthetics PLLC, MVC MSO LLC and/or Metro Vein Centers.

12.      This Court has personal jurisdiction over Defendants, MVC Clinical Practice-MI PC, A and G Aesthetics PLLC, MVC MSO LLC, and Albaron Partners

LP, because they maintain offices and facilities and engage in regular and systematic business and other activities within the Eastern District of Michigan and the acts attributed to these Defendants that give rise to Plaintiff's claims occurred within the Eastern District of Michigan.

13.     This Court has personal jurisdiction over Defendants, Golden and Daley, because they engage in regular and systematic business and other activities within the Eastern District of Michigan as executives, agents, and employees of Defendants, MVC Clinical Practice-MI PC, A and G Aesthetics PLLC, MVC MSO LLC, and  Albaron Partners LP, and the acts attributed to each of them that give rise to Plaintiff's claims occurred within the Eastern District of Michigan.

14.     Venue is proper in this district court pursuant 28 U.S.C. §1391(b) and (c) because Plaintiff resides and Defendants are located within the Eastern District of Michigan and the events that give rise to Plaintiff's claims occurred within the Eastern District of Michigan.

15.     Venue also is convenient in this judicial district.

## COMMON FACTUAL ALLEGATIONS

16.      Plaintiff is a female who was hired by Metro Vein Centers on August 13, 2018, as its Physician Liaison Manager/Quality Assurance Manager, with an office at its corporate offices in West Bloomfield, Michigan.

17.     Ali Meslemani M.D. ("Meslemani") is a current or former owner, shareholder, officer, member, board member, manager, chief executive, chief medical officer, and/or other employee of Defendants, MVC Clinical Practice, A and G Aesthetics, and MVS MSO LLC, which do business and operate as Metro Vein Centers.

18.     Upon information and belief, in August, 2017, Albaron Partners and the owners of  MVC MSO made a substantial investment in and obtained an ownership interest in and control of Metro Vein Centers and employees of Metro Vein Centers became employees or co-employees of MVC MSO in consideration for an agreement with Meslemani, MVC Clinical Practice and A and G Aesthetics by which MVC MSO thereafter exclusively managed the operations, revenues and expenses, billing, reimbursement, human resource and other functions of Metro Vein Centers.

19.     Upon information and belief, as of August, 2017, Albaron Partners and MVC MSO became co-employers of Plaintiff and the other employees of Metro Vein Centers and MVC MSO acted as an agent of Meslemani, Albaron Partners, MVC Clinical Practice, and A and G Aesthetics with respect to human resource management functions of Metro Vein Centers.

20.     Plaintiff excelled as a Physician Liaison Manager/Quality Assurance Manager for Metro Vein Centers, effectively developing, supporting,

and supervising its Physician Liaison Business Development representatives thereby generating new and continuing sources of business for Metro Vein Centers.

21.    Plaintiff succeeded in doing so despite discrimination against Plaintiff on account of her sex with respect to compensation and other terms and conditions of her Metro Vein Centers employment and an ongoing pattern of repeated and continuing, unwelcome and unwanted harassment based on sex of Metro Vein Centers female employees by Meslemani about which Plaintiff had knowledge.

22.    On January 24, 2019, Plaintiff was awarded a $15,000 raise by Dmitri Ivanov, President of Metro Vein Centers, because of her success and hard work as Physician Liaison Manager/Quality Assurance Manager for Metro Vein Centers.

23.    Defendant Golden was hired in February, 2019, as Chief Operating Officer of Metro Vein Centers.

24.    Plaintiff received no notice of job performance deficiencies for which she allegedly was culpable, warnings of any kind about her job performance, and was not subjected to discipline of any kind, a performance evaluation, or a correction action or performance improvement plan of any kind at any time between August 13, 2018, and May 6, 2019.

25.     Despite this, Golden concocted a scheme to demote Plaintiff from her job as Physician Liaison Manager/Quality Assurance Manager to a Physician Liaison Business Development position and to eventually terminate her employment because of her sex and concern that Plaintiff was aiding or supporting one or more female employees of Metro Vein Centers who had accused Meslemani of various acts of harassment based on sex.

26.     In accordance with his concocted scheme, Plaintiff was required to provide Golden with a description of her job duties and responsibilities as Physician Liaison Manager/Quality Assurance Manager for Metro Vein Centers, which he used to prepare Daley, Golden's less qualified, male friend and colleague, to become Plaintiff's replacement without Plaintiff's knowledge.

27.     On May 6, 2019, Golden notified Plaintiff during a meeting with her that he had demoted Plaintiff from her position as Physician Liaison Manager/Quality Assurance Manager for Metro Vein Centers to a Physician Liaison Business Development representative position.

28.     Golden took this action without cause and because of Plaintiff's sex so that he could replace her with Daley, Golden's less qualified, male friend and colleague.

29.     Golden took this action without cause and because of Plaintiff's sex to avoid paying her compensation and granting her benefits at least equal to

8

what Daley later received in the job as Physician Liaison Manager for Metro

Vein Centers although he had fewer duties and responsibilities than Plaintiff

had as Physician Liaison Manager/Quality Assurance Manager.

30.    Golden took this action without cause and because of Plaintiff's sex

because he intended to eventually terminate her employment because of her

sex and concern that Plaintiff was aiding or supporting one or more female

employees of Metro Vein Centers who had accused Meslemani of various acts

of harassment based on sex.

31.    On May 7, 2019, at a meeting with Plaintiff, Golden advised Plaintiff

that she should be grateful that her employment had not been terminated and

that she had not received a salary reduction as a result of her discriminatory

and otherwise unlawful demotion.

32.    Golden stated this to Plaintiff because of her sex, his concern that

Plaintiff was aiding or supporting one or more female employees of Metro Vein

Centers who had accused Meslemani of various acts of harassment based on

sex, and to coerce, intimidate, and implicitly threaten Plaintiff from providing

further aid or support to the employees.

33.    On May 13, 2019, Golden hired Daley, his less qualified male, friend

and colleague, to replace Plaintiff, but with only Physician Liaison Manager

responsibilities, at a salary and with benefits that substantially exceeded what Plaintiff received as Physician Liaison Manager/Quality Assurance Manager.

34.   The work performed by Plaintiff while she was employed as a Physician Liaison Manager/Quality Assurance Manager of Metro Vein Centers was at least equal or equivalent to the work performed by Daley as Physician Liaison Manager of Metro Vein Centers.

35.   Plaintiff's job as Physician Liaison Manager/Quality Assurance Manager of Metro Vein Centers required skill, effort, and responsibility at least equal or equivalent to Daley's job as Physician Liaison Manager of Metro Vein Centers.

36.   Plaintiff's job as Physician Liaison Manager/Quality Assurance Manager of Metro Vein Centers was performed under similar working conditions as Daley's job as Physician Liaison Manager of Metro Vein Centers.

37.   Golden set Plaintiff up to fail as a Physician Liaison Business Development representative by assigning her responsibilities within a territory in Pennsylvania that was already being serviced by another Metro Vein Physician Liaison and Business Development representative and although other Metro Vein Centers territories are serviced by only one Physician Liaison and Business Development representative.

38.    Golden set Plaintiff up to fail as a Physician Liaison Business Development representative because he intended to eventually terminate her employment because of her sex, to avoid paying her compensation and granting her benefits at least equal to what Daley received in the job as Physician Liaison Manager of Metro Vein Centers, and because of concern that Plaintiff was aiding or supporting one or more female employees of Metro Vein Centers who had accused Meslemani of various acts of harassment based on sex.

39.    Plaintiff received no notice of job performance deficiencies for which she allegedly was culpable, warnings of any kind about her job performance or that she was in jeopardy of losing her job, and she was not subjected to discipline of any kind, a performance evaluation, or a correction action or performance improvement plan of any kind at any time between May 6 and October 10, 2019.

40.    Defendants' unlawful and discriminatory scheme based on Plaintiff's sex and because of her protected activity culminated on October 10, 2019, when Plaintiff was notified by Daley, her male replacement, that her Metro Vein Centers employment was terminated effective that day for pretextual reasons, i.e. ostensibly because her job position no longer was needed, although Metro Vein Centers at that time continued to recruit

11

applicants for Physician Liaison and Business Development representative positions.

41.     Defendants terminated Plaintiff's employment on October 10, 2019, without cause and because of her sex, to avoid paying her compensation and granting her benefits at least equal to what Daley received in his job as Physician Liaison Manager of Metro Vein Centers, and because of concern that Plaintiff was aiding or supporting one or more female employees of Metro Vein Centers who had accused Meslemani of various acts of harassment based on sex.

42.     Defendants' purported reasons for demoting Plaintiff, failing to pay her compensation and grant her benefits at least equal to what Daley received in his job as Physician Liaison Manager of Metro Vein Centers, and the termination of her employment are not true and are a pre-text for discrimination against her on account of her sex and tortious interference with her employment contract and advantageous employment and business relationship with Metro Vein Centers.

## COUNT I – VIOLATION OF THE EQUAL PAY ACT OF 1963

43.     Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter re-iterated paragraph by paragraph.

12

44.     At all times relevant, MVC Clinical Practice, A and G Aesthetics, Metro Vein Centers, Albaron Partners, and MVC MSO were each an "employer" of and "employ[ed]" Plaintiff as these terms are defined by section 203(d) and (g) of the Fair Labor Standards Act, 29 U.S. C. §§201, *et seq*. *See* 29 U.S.C. §203 (d) and (g).

45.     At all times relevant, MVC Clinical Practice, A and G Aesthetics, Metro Vein Centers, Albaron Partners, and MVC MSO were each an "enterprise" as this term is defined by section 203(r) of the Fair Labor Standards Act, 29 U.S. C. §§201, *et seq*. *See* 29 U.S.C. §203 (r).

46.     At all times relevant, Plaintiff was an "employee" of MVC Clinical Practice, A and G Aesthetics, Metro Vein Centers, Albaron Partners, and MVC MSO as this term is defined by section 203(e) of the Fair Labor Standards Act, 29 U.S. C. §§201, *et seq*. *See* 29 U.S.C. §203 (e).

47.     At all times relevant, Golden was a "person" as this term is defined by section 203(a) of the Fair Labor Standards Act, 29 U.S. C. §§201, *et seq*. *See* 29 U.S.C. §203 (a).

48.     The Equal Pay Act of 1963 ("EPA), 29 U.S.C. §206(d) is an amendment to the Fair Labor Standards Act and prohibits "employer[s] ... [from] discriminat[ing] ... on the basis of sex by paying wages to employees [...] at a rate less than the rate [paid] to employees of the opposite sex [...] for equal

work on jobs [requiring] equal skill, effort, and responsibility, and which are performed under similar working conditions[.]"

49.    The work performed by Plaintiff while she was employed as a Physician Liaison Manager/Quality Assurance Manager of Metro Vein Centers was at least equal or equivalent to the work performed by Daley as Physician Liaison Manager of Metro Vein Centers.

50.    Plaintiff's job as Physician Liaison Manager/Quality Assurance Manager of Metro Vein Centers required skill, effort, and responsibility at least equal or equivalent to Daley's job as Physician Liaison Manager of Metro Vein Centers.

51.    Plaintiff's job as Physician Liaison Manager/Quality Assurance Manager of Metro Vein Centers was performed under similar working conditions as Daley's job as Physician Liaison Manager of Metro Vein Centers.

52.    Defendants, MVC Clinical Practice, A and G Aesthetics, Metro Vein Centers, Albaron Partners, MVC MSO, and Golden violated Plaintiff's rights under the EPA by:

   a. Failing to provide Plaintiff with compensation and benefits at least equal to what Daley received and is continuing to receive as Physician Liaison Manager of Metro Vein Centers;

b. Demoting Plaintiff from her former job as Physician Liaison Manager/Quality Assurance Manager of Metro Vein Centers and hiring Daley into this position because of her sex and to avoid paying her compensation and granting her benefits at least equal to what Daley received and is continuing to receive as Physician Liaison Manager of Metro Vein Centers; and

c. Terminating Plaintiff's employment because of her sex and to avoid paying her compensation and granting her benefits equal to what Daley received and is continuing to receive as Physician Liaison Manager of Metro Vein Centers of Metro Vein Centers.

53.     As a direct and proximate result of MVC Clinical Practice, A and G Aesthetics, Metro Vein Centers, Albaron Partners, MVC MSO, and Golden's aforementioned intentional violation of Plaintiff's civil rights as set forth in the EPA, Plaintiff has and will continue to suffer damages, including but not limited to: the loss of employment; the loss of salary, commissions, fringe benefits, and bonuses, both past and future; humiliation, mortification, embarrassment, and shock; mental, emotional and physical pain, suffering, and distress; and damage to her personal and professional reputation.

## COUNT II – VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT – SEX DISCRIMINATION

54.     Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter re-iterated paragraph by paragraph.

55.     At all times relevant, MVC Clinical Practice, A and G Aesthetics, Metro Vein Centers, Albaron Partners, and MVC MSO were each an "employer" of Plaintiff as this term is defined by section 201(a) of the Michigan Elliott-Larsen Civil Rights Act, MCL §§37.2101, et seq. ("ELCRA"). *See* MCL §37.2201(a).

56.     At all times relevant, Golden and Daley each was a "person" as this term is defined by section 103(g) of the Michigan Elliott-Larsen Civil Rights Act, MCL §§37.2101, et seq. ("ELCRA"), *see* MCL §37.2103(g), and each was an agent of MVC Clinical Practice, A and G Aesthetics, Metro Vein Centers, Albaron Partners, and MVC MSO Metro Vein Centers with respect to terms and conditions of and the termination of Plaintiff's former Metro Vein Centers employment.

57.     At all times relevant herein, under the ELCRA, Plaintiff had a right to employment with Metro Vein Centers free from discrimination against her based on her sex.

58.     Defendants, MVC Clinical Practice, A and G Aesthetics, Metro Vein Centers, MVC MSO, Golden, and Daley, violated Plaintiff's rights under the ELCRA by:

  a.     Demoting Plaintiff without cause and because of her sex;

16

b.    replacing Plaintiff with Daley, Golden's less qualified, male friend and colleague, without cause and because of her sex;

c.    Failing to pay Plaintiff compensation and to grant her benefits at least equal to what Daley later received in the job as Physician Liaison Manager of Metro Vein Centers without cause and because of her sex;

d.    Demoting Plaintiff without cause and because of concern that Plaintiff was aiding or supporting one or more female employees of Metro Vein Centers who had accused Meslemani of various acts of harassment based on sex;

e.    Terminating Plaintiff's employment without cause and because of her sex;

f.    Terminating Plaintiff's employment without cause and because of concern that Plaintiff was aiding or supporting one or more female employees of Metro Vein Centers who had accused Meslemani of various acts of harassment based on sex;

g.    Treating Plaintiff differently than similarly situated male employees; and

h.    Otherwise discriminating against and disparately treating Plaintiff on the basis of her sex with respect to compensation and the terms, conditions and privileges of her employment.

59.    As a direct and proximate result of MVC Clinical Practice, A and G Aesthetics, Metro Vein Centers, Albaron Partners, MVC MSO, Golden, and Daley's aforementioned intentional violation of Plaintiff's civil rights as set forth by the ELCRA, Plaintiff has and will continue to suffer damages, including but not limited to: the loss of employment; the loss of salary, commissions,

17

fringe benefits, and bonuses, both past and future; humiliation, mortification, embarrassment, and shock; mental, emotional and physical pain, suffering, and distress; and damage to her personal and professional reputation.

**COUNT III – VIOLATION OF THE**
**ELLIOTT-LARSEN CIVIL RIGHTS ACT – RETALIATION/INTERFERENCE**

60.     Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter re-iterated paragraph by paragraph.

61.     At all times relevant, MVC Clinical Practice, A and G Aesthetics, Metro Vein Centers, Albaron Partners, and MVC MSO were each an "employer" of Plaintiff as this term is defined by section 201(a) of the Michigan Elliott-Larsen Civil Rights Act, MCL §§37.2101, <u>et seq</u>. ("ELCRA"). *See* MCL §37.2201(a).

62.     At all times relevant, Golden and Daley each was a "person" as this term is defined by section 103(g) of the Michigan Elliott-Larsen Civil Rights Act, MCL §§37.2101, <u>et seq</u>. ("ELCRA"), *see* MCL §37.2103(g), and each was an agent of MVC Clinical Practice, A and G Anesthetics, Metro Vein Centers, Albaron Partners, and MVC MSO Metro Vein Centers with respect to terms and conditions of  and the termination of Plaintiff's former Metro Vein Centers employment.

18

63.     At all times relevant herein, under the ELCRA, Plaintiff had a right to employment with Metro Vein Centers free from retaliation, discrimination or interference because a person has opposed a violation of the ELCRA and from coercion, intimidation, threats, retaliation, discrimination, and/or interference on account of having aided or encouraged any other person in the exercise of any right granted or protected by the ELCRA. *See* MCL §37. 2701.

64.     Defendants, MVC Clinical Practice, A and G Aesthetics, Metro Vein Centers, MVC MSO, Golden, and Daley, violated Plaintiff's rights under the ELCRA by:

a.     Demoting Plaintiff without cause and because of concern that Plaintiff was aiding or supporting one or more female employees of Metro Vein Centers who had accused Meslemani of various acts of harassment based on sex;

b.     Denying Plaintiff compensation and benefits at least equal to that received by Daley because of concern that Plaintiff was aiding or supporting one or more female employees of Metro Vein Centers who had accused Meslemani of various acts of harassment based on sex;

c.     Terminating Plaintiff's employment without cause and because of concern that Plaintiff was aiding or supporting one or more female employees of Metro Vein Centers who had accused Meslemani of various acts of harassment based on sex;

d.     Treating Plaintiff differently than similarly situated male employees because of concern that Plaintiff was aiding or supporting one or more female employees of

Metro Vein Centers who had accused Meslemani of various acts of harassment based on sex; and

e.  Otherwise discriminating against and disparately treating Plaintiff with respect to compensation and the terms, conditions and privileges of her employment because of concern that Plaintiff was aiding or supporting one or more female employees of Metro Vein Centers who had accused Meslemani of various acts of harassment based on sex.

65.  As a direct and proximate result of MVC Clinical Practice, A and G Aesthetics, Metro Vein Centers, Albaron Partners, MVC MSO, Golden, and Daley's aforementioned intentional violation of Plaintiff's civil rights as set forth by the ELCRA, Plaintiff has and will continue to suffer damages, including but not limited to: the loss of employment; the loss of salary, commissions, fringe benefits, and bonuses, both past and future; humiliation, mortification, embarrassment, and shock; mental, emotional and physical pain, suffering, and distress; and damage to her personal and professional reputation.

## COUNT IV- TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIP AND EXPECTANCY

66.  Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter re-iterated paragraph by paragraph.

67.    Golden and Daley were personally aware that between August 2018, and October 10, 2019, Plaintiff enjoyed a favorable employment and business relationship with Metro Vein Centers.

68.    Golden and Daley knew that Plaintiff had reason to be confident that her favorable employment and business relationship with Metro Vein Centers would continue indefinitely and at least until she chose to voluntarily terminate or retire from her Metro Vein Centers employment.

69.     Golden and Daley knew that Plaintiff annually earned a substantial salary, commissions, and bonuses and received health care, retirement, and other fringe benefits from Metro Vein Centers because of her favorable employment and business relationship with Metro Vein Centers.

70.    Golden intentionally and tortiously interfered with Plaintiff's advantageous employment and business relationship with Metro Vein Centers when on May 6, 2019, he demoted Plaintiff from her position as Physician Liaison Manager/Quality Assurance Manager to a Physician Liaison Business Development representative position without cause and because of her sex so that he could replace her with Daley, Golden's less qualified, male friend and colleague; to avoid paying her compensation and granting her benefits at least equal to what Daley later received in the job as Physician Liaison Manager for Metro Vein Centers although he had fewer duties and responsibilities than

21

Plaintiff had as Physician Liaison Manager/Quality Assurance Manager; and because he intended to eventually terminate her employment because of her sex and concern that Plaintiff was aiding or supporting one or more female employees of Metro Vein Centers who had accused Meslemani of various acts of harassment based on sex.

71.     Golden and Daley intentionally and tortiously interfered with Plaintiff's advantageous employment and business relationship with Metro Vein Centers when they decided to terminate and effectuated the termination of Plaintiff's employment, effective October 10, 2019, without cause and because of her sex both to avoid paying her compensation and granting her benefits at least equal to what Daley received in the job as Physician Liaison Manager of Metro Vein Centers and because of concern that Plaintiff was aiding or supporting one or more female employees of Metro Vein Centers who had accused Meslemani of various acts of harassment based on sex.

72.     As a direct and proximate result of Golden and Daley's aforementioned intentional and tortious interference with Plaintiff's advantageous employment and business relationship with Metro Vein Centers, Plaintiff has and will continue to suffer damages, including but not limited to: the loss of employment; the loss of salary, commissions, fringe benefits, and bonuses, both past and future; humiliation, mortification, embarrassment, and

22

shock; mental, emotional and physical pain, suffering, and distress; and damage to her personal and professional reputation.

## COUNT V- TORTIOUS INTERFERENCE WITH AN EMPLOYMENT CONTRACT

73.     Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter re-iterated paragraph by paragraph.

74.    Plaintiff was employed by Metro Vein Centers in accordance with an express or implied employment contract

75.     Golden and Daley were personally aware of and familiar with Plaintiff's employment contract and that between August 2018, and October 10, 2019, Plaintiff enjoyed a favorable employment relationship with Metro Vein Centers.

76.     Golden and Daley knew that Plaintiff had reason to be confident that her favorable employment relationship with Metro Vein Centers would continue indefinitely and at least until she chose to voluntarily terminate or retire from Metro Vein Centers employment.

77.     Golden and Daley knew that Plaintiff annually earned a substantial salary, commissions, and bonuses and received health care, retirement, and

other fringe benefits from Metro Vein Centers because of her favorable employment relationship with Metro Vein Centers.

78.    Golden intentionally and tortiously interfered with Plaintiff's employment contract with Metro Vein Centers when on May 6, 2019, he demoted Plaintiff from her position as Physician Liaison Manager/Quality Assurance Manager to a Physician Liaison Business Development representative position without cause and because of her sex so that he could replace her with Daley, Golden's less qualified, male friend and colleague; to avoid paying her compensation and granting her benefits at least equal to what Daley later received in the job as Physician Liaison Manager for Metro Vein Centers although he had fewer duties and responsibilities than Plaintiff had as Physician Liaison Manager/Quality Assurance Manager; and because he intended to eventually terminate her employment because of her sex and concern that Plaintiff was aiding or supporting one or more female employees of Metro Vein Centers who had accused Meslemani of various acts of harassment based on sex.

79.    Golden and Daley intentionally and tortiously interfered with Plaintiff's employment contract with Metro Vein Centers when they decided to terminate and effectuated the termination of Plaintiff's employment, effective October 10, 2019, without cause and because of her sex both to avoid paying

her compensation and granting her benefits at least equal to what Daley received in the job as Physician Liaison Manager of Metro Vein Centers and because of concern that Plaintiff was aiding or supporting one or more female employees of Metro Vein Centers who had accused Meslemani of various acts of harassment based on sex.

80.    As a direct and proximate result of Golden and Daley's aforementioned intentional and tortious interference with Plaintiff's employment contract with Metro Vein Centers, Plaintiff has and will continue to suffer damages, including but not limited to: the loss of employment; the loss of salary, commissions, fringe benefits, and bonuses, both past and future; humiliation, mortification, embarrassment, and shock; mental, emotional and physical pain, suffering, and distress; and damage to her personal and professional reputation.

**WHEREFORE,** Plaintiff requests that this Court enter an Order and Judgment against each Defendant, jointly and severally, awarding to Plaintiff:

a.    Compensatory damages in an amount in excess of $75,000.00 to which she is found to be entitled, inclusive of back and front pay, commissions, bonus, and other compensation lost by Plaintiff due to her demotion, pay discrimination, and the termination of her employment and reimbursement for costs incurred by Plaintiff to replace lost benefits;

b.      Liquidated damages for their violation of the Equal Pay Act of 1963;

c.      Compensatory damages for mental anguish, emotional distress, humiliation and injury to her reputation;

d.      Punitive and/or exemplary damages;

e.      Reasonable attorney fees and costs, including expert witness fees, and pre and post judgment interest;

f.      Injunctive or equitable relief to foreclose further violations of the ELCRA, EPA, and Michigan common law; and

g.      Such other legal or equitable relief as this Court deems appropriate.

Respectfully submitted,

**GASIOREK, MORGAN, GRECO, McCAULEY & KOTZIAN, P.C.**

*/s/ Raymond J. Carey*
**Raymond J. Carey (P33266)**
Attorneys for Plaintiff
30500 Northwestern Hwy., Ste. 425
Farmington Hills, MI  48334
(248) 865-0001
rcarey@gmgmklaw.com

DATE: April 23, 2020

## DEMAND FOR TRIAL BY JURY

Plaintiff Tracy Huss, by her attorneys, GASIOREK, MORGAN, GRECO, MCCAULEY & KOTZIAN P.C., demands a trial by Jury.

Respectfully submitted,

**GASIOREK, MORGAN, GRECO,
MCCAULEY & KOTZIAN, P.C.**

BY:    */s/ Raymond J. Carey*
Raymond J. Carey (P33266)
Attorney for Plaintiff
30500 Northwestern Hwy, Ste. 425
Farmington Hills, MI 48334
(248) 865-0001
rcarey@gmgmklaw.com

Date:  April 23, 2020